IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Ronnie Lewis Ware, ) | C/A No. 0:12-2965-MGL-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Ronnie Lewis Ware ("Ware"), brought this action pursuant to 42 U.S.C. § 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that this matter should be affirmed.

### ADMINISTRATIVE PROCEEDINGS

In July 2009, Ware applied for SSI, alleging disability beginning September 1, 1998. Ware's application was denied initially and on reconsideration and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on March 14, 2011 at which Ware appeared and testified and was represented by Conrad Falkiewicz, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision March 24, 2011 finding that Ware was not disabled. (Tr. 13-22.)

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



Ware was born in 1964 and was forty-five years old on the date his application was filed. (Tr. 116.) He has a limited education and has past relevant work experience as a stocker and a laborer. (Tr. 149, 153.) Ware alleges disability since September 1, 1998 due to a gunshot wound and being HIV positive. (Tr. 149.)

The ALJ made the following findings and conclusions:

1. The claimant has not engaged in substantial gainful activity since July 21, 2009, the application date (20 CFR 416.971 *et seq.*).
   * * *
2. The claimant has the following severe impairments: human immunodeficiency virus (HIV), residuals of a gunshot wound to the left leg, and neuropathy (20 CFR 416.920(c)).
   * * *
3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
   * * *
4. . . . [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a). Specifically, the claimant can lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally. However, he cannot climb ladders, ropes or scaffolds, and he can only occasionally perform other postural movements. Additionally, the claimant requires a cane for ambulation.
   * * *
5. The claimant is unable to perform any past relevant work (20 CFR 416.965).
   * * *
6. The claimant was born . . . [in] 1964 and was 45 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).
   * * *
8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).



* * *

10.     The claimant has not been under a disability, as defined in the Social Security Act, since July 21, 2009, the date the application was filed (20 CFR 416.920(g)).

(Tr. 14-20.)

Ware filed a request for Appeals Council review which was denied on August 7, 2012, making the decision of the ALJ the final action of the Commissioner. (Tr. 2-5.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 1382c(a)(3)(H)(I), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1)     whether the claimant is engaged in substantial gainful activity;

(2)     whether the claimant has a "severe" impairment;

(3)     whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)     whether the claimant can perform his past relevant work; and

(5)     whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 416.920(a)(4).[2]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.  However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 416.920(h).



than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

## ISSUES

Ware raises the following issues for this judicial review:

I.     The ALJ erred at Step Three of the sequential evaluation process; and

II.    The ALJ's credibility analysis does not rest on substantial evidence; and

III.   The ALJ erred by giving significant weight to Dr. Liles' August 2009 opinion.

(Pl.'s Br., ECF No. 16.)

## DISCUSSION

**A.     The Listings**

At Step Three of the sequential analysis, the Commissioner must determine whether the claimant has an impairment that meets or equals the requirements of one of the impairments listed in the social security regulations that results in a presumption that the claimant is disabled.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1.  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).  It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment.  20 C.F.R. § 416.925(d).  The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment.  20 C.F.R. § 416.908.



When a claimant has more than one impairment, the ALJ must consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 416.923; see also Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989).

As stated above, the ALJ found that Ware's HIV, gunshot wound residuals, and neuropathy constituted severe impairments. Ware argues that the ALJ erred as matter of law in failing to expressly consider if the combined effects of his "multiple complicated foot impairments, documented neuropathy, and broken femur, considered together, are at least equal in severity to the specific requirements of Listing 1.06." (Pl.'s Br. at 11.)

At Step Three, the ALJ found that Ware "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." (Tr. 15.) The ALJ specifically considered whether Ware met Listing 14.08 (Human immunodeficiency virus (HIV) infection), Listing 1.02 (Major dysfunction of a joint(s)), and Listing 11.14 (Peripheral neuropathies). Lastly, the ALJ stated

> the undersigned has considered the combined effects of the claimant's alleged impairments, both severe and non-severe, on the claimant's ability to work. See Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989). While the combination of the claimant's impairments imposes some limitations, there is no indication in the record that the claimant's ability to sustain consistent function has been complicated by the combination of these impairments or that the cumulative effects of the claimant's impairments imposes greater limitations than those inherent in the residual functional capacity [finding].

(Tr. 15.)

Ware poses a number of objections to the ALJ's Step Three finding. First, he posits that the ALJ meant to refer to Listing 1.06, "Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones." This Listing requires the following findings: "A. Solid union not evident on appropriate

medically acceptable imaging and not clinically solid; and B. Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.06. Ware argues that he presented evidence that solid union had not yet occurred on his femur and, in fact, his latest x-ray of record showed that he had a "comminuted distal femur fracture with some interval healing." (Tr. 309.)

Ware suggests that his intermittent reliance on a two-wheeled walker fills the requirement that he cannot "ambulate effectively." There is no error in the ALJ's finding, however, as Ware has *not* provided evidence that he cannot ambulate effectively. "Inability to ambulate effectively" is a term of art in Social Security disability determinations and is defined as follows:

> Inability to ambulate effectively means an *extreme limitation* of the ability to walk; i.e., an impairment(s) that *interferes very seriously* with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.00B2b (emphasis added).

Ware's medical records last mention use of a walker in September 2009, three months after he experienced his gunshot wound. (See Tr. 304.) The ALJ referenced February 2010 progress notes which reflected that he ambulated without an assistive device. (Tr. 17.) During his neurology consultation in March 14, 2011, it was noted that he ambulated without assistive devices. (Tr. 334.) The ALJ also referred to Ware's testimony that he "can walk only very short distances *without a*

*cane.*" (Tr. 16) (emphasis added). Even Ware's "new" evidence[3] reports that his activities were only "moderately" limited by the restriction in his ambulation. (Tr. 387.)

The ALJ's decision contains substantial evidence to support the ALJ's finding that Ware does not suffer from an inability to ambulate effectively. As this is a requirement of either Listing 1.02 or 1.06, Ware has failed to offer evidence that his impairment(s) either meets or equals either Listing. See Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002) (the ALJ need only articulate the evidence sufficiently to enable the court to trace his path of reasoning); see also Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."), quoted in Shkabari v. Gonzales, 427 F.3d 324, 328 (6th Cir. 2005); Cruz-Funez v. Gonzales, 406 F.3d 1187, 1191 (10th Cir. 2005); Federal Express Corp. v. Mineta, 373 F.3d 112, 118 (D.C. Cir. 2004).

**B.     Credibility**

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). It appears that in this matter

---

[3] In determining whether the Commissioner's final decision is supported by substantial evidence and reached through the application of the correct legal standard, the court must " 'review the record as a whole' including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.' " Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011) (alterations in original) (quoting Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (1991)).



only the second step is at issue,[4] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects [his] ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i)    Your daily activities;
(ii)   The location, duration, frequency, and intensity of your pain or other symptoms;
(iii)  Precipitating and aggravating factors;
(iv)   The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

---

[4] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).

PJG

    (v)        Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
    (vi)       Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
    (vii)      Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

Ware argues that the ALJ erred in assessing his credibility by (1) ignoring that Ware continued to require treatment for the HIV that caused his "rapidly progressing neuropathy"; (2) ignoring Ware's ongoing neuropathic pain and use of a cane; and (3) finding that Ware's daily activities are "incompatible with allegations of severe pain." (Pl.'s Br. 15.)

In this case the ALJ found that Ware's "statements concerning the intensity, persistence and limiting effects of [his alleged] symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 18.) In reaching this conclusion, the ALJ found that the medical evidence did not support Ware's alleged symptoms. For example, the ALJ observed that, only ten months prior to his application date, Ware remained without HIV symptoms and continued to postpone treatment that had first been offered in October 2007. Ware did not agree to begin HIV treatment until June 2009 when his CD4 count fell to 323 with a viral load of 7,206. (Tr. 17.)

The ALJ noted that Ware tolerated his treatment well after some initial nightmares and drowsiness. (Id.) The ALJ also indicated that at a visit in February 2010, Ware admitted that he had not taken his medication for a week, yet he reported feeling "quite well, with no new complaints." (Id.) His March 2010 records reflect that Ware's HIV was "under excellent control." (Id.) As Ware points out, the ALJ stated that, after his June 2010 appointment, "[t]here is no indication in the record that the claimant subsequently required significant treatment for any HIV-related symptoms."



(Id.) However, as discussed hereinafter, there is evidence that Ware's neuropathy stems, at least in part, from his HIV.

As to Ware's neuropathy, the ALJ first observed that, in February and March 2010, its etiology "remained uncertain." (Id.) He further found that Ware reported bilateral foot pain in April 2010, but Ware said that it was confined to his feet. In June 2010, Ware's HIV care provider, Dr. Michael Kilby, noted that he occasionally needed a cane and, upon examination, the doctor found dysesthesias on Ware's soles, but no other abnormalities. Dr. Kilby arranged for neurological studies, and a nerve conduction study revealed mild sensory neuropathy, although an electromyography study was normal. (Id.) On that same date, however, Ware sought emergency treatment for complaints of pain and tenderness of his feet (Tr. 381-84).

At his January 2011 clinic visit, Ware reported that his feet had become extremely sensitive and that even bedsheets and shoes caused pain (Tr. 338), but the ALJ noted that Ware told the doctor that "he had walked long distances and had to catch several buses in order to attend his appointment." (Tr. 17-18.) A neurology consultation observed that Ware's symptoms had progressed to his mid-thighs, and concluded that the etiology "may be multifactorial," including HIV, HAART, a history of B12 deficiency, and chronic alcohol intake. (Tr. 335.) But, as the ALJ noted, a physical exam revealed only decreased sensation of Ware's feet and hands and normal coordination. (Tr. 18.)

Although not contained in his listing of arguments, Ware goes on to address the ALJ's discussion of his orthopedic complaints. Ware suffered a gunshot wound to his left lower extremity in June 2009, and the ALJ observed that, during his follow-up visit two months later, Ware's range of motion had improved, although he was not yet weight-bearing. His wounds had healed well, with no signs of infection, drainage, or erythema, and Ware experienced no tenderness to deep palpation



throughout the left lower extremity. He had intact sensation to light touch, and his x-ray revealed stable appearance of inserted hardware. After three months, Ware additionally exhibited full extension of his knee, and an x-ray revealed no evidence of acute bony abnormality or hardware complication. (Tr. 17.)

Ware objects to the ALJ's notation that, by February 2010, he "had ceased taking prescribed pain medications for his left lower extremity and . . . exhibited no joint pain or swelling and ambulated without an assistive device." (Id.) Ware is correct that there is evidence that, thereafter, he sometimes used a cane, but there is no indication that the cane usage was related to orthopedic sequelae from his gunshot wound. Moreover, the ALJ noted Ware's use of a cane in his residual functional capacity (RFC) finding, and specifically found that Ware "must be afforded the opportunity to use a cane for ambulation." (Tr. 19.)

Lastly, Ware refers to the ALJ's discussion of his daily activities. The ALJ summarized Ware's hearing testimony, including that he experiences constant left leg and foot pain at an average level of nine on a ten-point scale. (Tr. 16.) Ware reported that he cannot wear regular shoes for more than one hour, and "can walk only very short distances without a cane." (Id.)

The ALJ noted that Ware reported sitting and watching television for six to seven hours per day, independently dressing himself and caring for his personal hygiene, visiting with friends every other day, and attending church twice per month. (Tr. 18.) Ware added that he prepared simple meals and shopped for food once per month. The ALJ additionally noted Ware's report of using public transportation, and concluded that these activities were inconsistent with "allegations of severe and disabling pain." (Id.)

Ware argues that none of these activities are "actually incompatible with allegations of severe pain" (Pl.'s Br. 15), and the court agrees. However, all of the activities, taken together, do provide



substantial evidence to support the ALJ's conclusion that Ware does not suffer from "disabling" pain. See Stuckey v. Sullivan, 881 F.2d 506, 509 (7th Cir. 1989) ("Disability requires more than mere inability to work without pain."); Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989) (same); Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983) (same). Upon review of the record, the ALJ's decision, and the parties' arguments, the court finds that Ware has failed to demonstrate that the ALJ's credibility analysis was not supported by substantial evidence or was controlled by an error of law. See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling"); Flowers v. Apfel, No. 98-2112, 1999 WL 150491, at *2 (4th Cir. 1999) (finding that a claimant's alleged limitations were not supported by the record when they were never reported to his treating physician).

**C.    Treating Physician's Opinion**

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 416.927(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th

Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

  Dr. Laura Liles treated the effects of Ware's gunshot wound. The ALJ noted Dr. Liles's August 2009 note that Ware's wounds had healed well, with no signs of infection, drainage, or erythema. (Tr. 17.) Dr. Liles also wrote that Ware exhibited no tenderness to deep palpation throughout his lower extremity and exhibited intact sensation to light touch throughout the entire extremity. As summarized by the ALJ, "[I]n September 2009, Dr. Liles opined that the claimant could bear full weight on the left lower extremity, as tolerated, and that he could continue to use his hinged knee brace and front-wheel walker as needed." (Tr. 18.) The ALJ accorded this opinion "significant weight" as it was "supported by [Dr. Liles's] treating relationship with the claimant and the evidence of the claimant's progressive improvement." (Id.)

  Ware contrasts Dr. Liles's opinion with that of Dr. Landgon Hartsock, who opined two months earlier that Ware could not bear weight on his left lower extremity (Tr. 195), and with an opinion of Dr. Liles issued one month earlier that Ware could increase his weightbearing to twenty-five percent of his weight (Tr. 190). The court, however, finds reasonable the ALJ's explanation,



in assigning these opinions "little weight," that "these opinions were rendered immediately after and two months after the claimant's surgery and appear to be temporary-post-operative restrictions, *as they are not reiterated in subsequent treatment notes*."  (Id.) (emphasis added).  Indeed, the progression from bearing no weight to bearing twenty-five percent weight supports the "progressive improvement" to which the ALJ refers.  Further, there is no evidence in the record that Ware sought out any additional orthopedic treatment.  Moreover, the ALJ considered Ware's use of a cane, "his recent documented reports of increased bilateral leg numbness," and his peripheral neuropathy in forming his RFC.  (Tr. 19.)  Thus, the court finds no reversible error in the ALJ's decision to accord significant weight to Dr. Liles's opinion.

## RECOMMENDATION

For the foregoing reasons, the court finds that Ware has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

December 11, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).